Good afternoon, everyone. Good afternoon, Judge Easterbrook. Good afternoon. You can see and hear us, correct? Yes. Very good. All electrons working. Thank you. We're here today for oral argument. The court calls Appeal 26-1864, Tushawn Craig et al. v. City of Richmond, Indiana. We're going to begin with oral argument on behalf of the appellant. I'll first recognize Mr. Thomas. May it please the court. The appellant, the City of Richmond, seeks an order from this court reversing the district court's remand order and affirming the trial court's Class Action Fairness Act CAFA jurisdiction in this matter. Appellant asserts four reasons for reversal. The first is that the district court properly reviewing CAFA jurisdiction sua sponte invoked the mass action exception in play here. Second, the district court wrongly interpreted the exception under 1332D11B2 broadly in contravention to CAFA. The Seventh Circuit should adopt either the Ninth Circuit's interpretation of a singular happening or, alternatively, the Eleventh Circuit's interpretation of this exception. Third, regardless of this circuit's interpretation of the breadth of the mass action exception, the district court erred in applying it to the plaintiff's complaint in this case. Fourth and finally, the district court erred in failing to review the city's alternative basis for removal, which relates to a prior class action removal and jurisdictional battle between these same plaintiffs and same counsel. First, as to the sua sponte review of the court's jurisdiction, courts are informed to evaluate their jurisdiction sua sponte. However, once CAFA jurisdiction has been established, as it was by the city in this case, the city submits that it was improper to invoke an exception to jurisdiction under CAFA sua sponte. The district court's CAFA jurisdiction is met... Counsel, I'm not sure I understand that. If the D11 exception is jurisdictional, isn't it necessary for the district court to take notice of the problem on its own? Absolutely, Your Honor. And the question before the court today is that this exception has not been evaluated by the court and has not been determined to be jurisdictional. The district court... Well, okay. So why isn't it jurisdictional? As I understand it, 11B2 Romanet 1 defines certain things as not class actions for purposes of 1332D. And if they're not class actions for purpose of 1332D, then complete diversity is required. What's wrong with that sequence? That is correct, Your Honor, if you view the exceptions as part of the definition of the rule. But this court in Abbott Laboratories said that once they established the elements of 11B1, those three elements of monetary relief claims, 100 or more persons, and that they propose to be tried jointly, then the case is, and I quote, removable. And so the question becomes whether or not the exceptions in B2 are in fact statutory exceptions. I don't know that it's an exception from a rule, okay? If you look at the way Congress set this out, there's a definition of the term mass action. And all Congress has done is said in the Romanet 2 provision that a mass action is not the following. So why don't you just read them together to come up with what the definition of mass action is? I don't know that it's, you know, a norm and then an exception or a rule and then an exception. It's just a definition. And it's because of the legislative history that describes these four elements as exceptions that the city submits this argument. The city acknowledges that if this court finds— What ambiguity would legislative history resolve? I mean, you know the Supreme Court's current view of legislative history. Yes, Your Honor. So we want to talk about the text. And if we want to move on to the exception, the city submits that if it's proper for the court to review this, because it's jurisdictional, we believe that the court's teaching in Abbott Laboratories suggested it may not be. We don't believe the exception should apply here. And we can get to the exception if the court wants to move past the sua sponte discussion. Go ahead. So the second question is that whether the court should adopt the Ninth Circuit's singular happening holding of the interpretation of the exception or whether the court might follow the Eleventh or Fifth Circuit in adopting a continuous events standard. Can we—here's what throws me off. Rather than focus on this circuit or that circuit, why don't we just do what Judge Easterbrook suggested? Why don't we just look at the statutory language and then just ask the question, why is it inaccurate to say that each of the claims that are in that complaint filed in Wayne County, Indiana, arise from the April 2023 fire in Richmond? What's inaccurate about that? And that's just looking at the language. It's not worried about this circuit or that circuit. Well, I believe the language used by Congress is both singular and event and occurrence all singular terms. The instructions were that the exceptions in this CAFA jurisdiction were to be construed narrowly. The CAFA jurisdiction was broadening this court's and federal court's jurisdiction over— Don't worry about the path to it, right? Just focus on all of the claims in the action. So that means we should go look at the complaint filed in Wayne County and ask ourselves, do all of the claims arise from an event or occurrence? And I think each of the claims, negligence, et cetera, et cetera, arise from an event. It was a fire. And the city submits that at least three of the complaints and claims do not—were cognizable before the fire. And, in fact, the very text of the plaintiff's complaint talks about the fire and defendant's negligence. They specifically— Well, it talks about the fire and its causes. So let's see how far you take this distinction between the tort and its causes. Suppose a truck driver driving a big, heavy truck gets drunk, gets in the cab, and has a very serious accident in which there's a pileup, a chain reaction pileup. Do we have one event or three? By your count, it sounds like we have three events, the drinking, the rollover, and then the pileup. But normally one would think there's just one tort here. The fact that a tort has causes doesn't make it two torts. Isn't that—what am I missing? Your Honor, we would agree that in your hypothetical, a truck driver could have a single event even if there were multiple elements of that same event. So the city concedes that point. So what you seem to be arguing—maybe I'm misunderstanding your argument—but you seem to be arguing that a tort that has causes must be multiple events. And then you point to the causes of this fire. I believe that we are arguing a different hypothetical, Your Honor. If the same plaintiff's complaint in your drunk driving action also brought an action against the state and city constructors of that highway, and they had claims that the highway was also designed poorly and that was also partially a blame for the injuries of the hypothetical plaintiff in your case, that would be two separate types of activities. And the Ninth Circuit dealt with that in Allen v. Boeing when they had sued a contaminator and a remediator, an environmental consultant, that were conducting separate activities. And the Ninth Circuit said that those would not meet the exception, and the city submits that those would not meet the exceptions here. Here, the my way defendants are the ones that were doing industrial activities and allegedly causing the accumulation of fire hazards, whereas the claims against the city were about how they had inspected, how they had behaved in regulating that. Assuming there was no fire for a second. There wasn't a fire. Would there be any claims? We believe the nuisance claim would have still been viable by plaintiffs. They allege that the claim and the accumulation of the plastics and the materials themselves was a nuisance. Also, the ultra-hazardous activities, a strict liability claim relates to activities prior to the fire. And they specifically allege events of these inspections against the city that were six or more years prior to what happened to cause the event of April 2023. So, yeah, that surprises me. You read that complaint honestly to be about injury caused by something other than the fire? There's absolutely claims for diminution of value of homes. There's claims for... Now, counsel, you're using claim in a very strange way. The harm from harm to the homes is damages. It's not a claim, right? The legal theory in support of recovery is not a claim. The claim is the wrong done, and the wrong done is the fire. It has causes. That's not a separate claim. It has consequences, damages. The damages are not a separate claim. They're a remedy. Why are you using claim, multiplying the number of claims in something that seems, well, straightforward? We do believe there were several counts, if that's the right term, rather than claims. Plaintiffs routinely plead every legal theory and every damages argument as a separate claim. But that doesn't make it one. We believe the plaintiff's complaint was in part cognizable before the fire, and in fact that it specifically, as we were reviewing the complaint to consider the removal, said it's about the fire and other events. It's about a chain of events leading to the fire, and so it wasn't about a singular event. Counsel, I must say that's exactly why I gave you my truck driver hypothetical. Drunk driving is a crime. It could be prosecuted as a crime even if the truck doesn't roll over. But when I said drunk driving leads to the rollover, leads to the pileup, you said, oh, no, no, no, that's just one claim or one event or occasion, even though there are causes, and even though the causes are separately remediable. I just don't understand why this isn't the very same thing. It's because the complaints against the city were not related to the fire alone. They were related to the interactions with this property in terms of inspecting, in terms of creating or abating a nuisance, and we believe that those counts of their complaint were cognizable whether or not there was a fire. There are several claims that allege damages relating to the fire, and we concede that that is an event. The question is whether there was only one event, and even if it was only the fire or a hypothetical example of an accident, the question in the Eleventh Circuit's mind was whether a culminating event also included collective or concerted action by the defendants. And so even if you have one event, for example, the fire, the exception does not apply if you have multiple causes that are not concerted action together. And so because there are different paths that lead to a culminating event, the Eleventh Circuit said that that's... Oh, I hate to go back to my truck driver example, but suppose it happens that the drunk truck driver is also talking on his cell phone at the time of the accident. We now have multiple causes, the drunk driving, the talking on the cell phone. They are both illegal, but do you think we now have multiple events? No, Your Honor. I think that if there are a collection of defendants that are involved in that one event, as your hypothetical suggests, then that would permit the exception to apply. The difference here is that there is a separate set of activities, specifically a city that was supposed to prevent this action, and those are the types of claims that are separate from the event of the MiWay defendants and their industrial activities. Would you like to reserve the remainder of your time? Yes, Your Honor. Thank you, Mr. Thomas. We'll now move to oral argument on behalf of the appellee, Mr. Croson. May it please the Court, and good afternoon. We're here to discuss two issues. The first issue is the jurisdictional requirement of CAFA, and defendant has argued that this is an exception, whereas it's a definitional exclusion, as Judge Scudder already talked about. The second issue is whether the exception that applies here, that this is an event or an occurrence. Before you get too far into the law and we start asking you questions about that, can you just set the law aside for a minute and answer this? Why was this second lawsuit filed? I was having a very hard time figuring out what in the world is going on with this second lawsuit. There was already a first one. Your Honor, the reason for that is the statute of limitations was coming up. The class certification had not been determined by the district court. There was an evacuation zone that we wanted to be for the class, and we had some clients who retained us that were both inside the evacuation zone and some that were outside the evacuation zone, and they had viable claims. Without getting into any attorney-client privileged information, why did your firm then withdraw from the class action? We felt that it was best because those clients had signed up with us, with my firm, and we didn't feel like we could adequately represent the class as well as individually if there was no class. We had 150 or so plaintiffs, and we felt that it was necessary to do that so that we could adequately represent them individually. But suppose the class action fell apart for whatever reason. Sure. The case had originally been removed from state court to federal court, right? So what's the basis for the worry that it would somehow be untimely? It was filed timely, or at least it looks like it was filed timely. Why does it become untimely if it's removed to federal court? There was only two plaintiffs named as principal plaintiffs in the class action, Your Honor, and if that gets kicked back down or doesn't get certified, none of the plaintiffs have been identified, and we felt that it was important for those plaintiffs to be identified individually. To go in and name every single one of them? I'm sorry? So the second lawsuit was to name every one of them by first and last name? Absolutely, 153 of them, Your Honor, and that's what brings us here on the mass action. And we felt we owed that to our clients that retained us because we did not know what the class certification was going to hold for all of our clients. You may continue. So the issue that defendants bring up is that this is an exclusion, is an exception. They keep talking about how it's an exception, and the Hart case discussed specifically D-3 and D-4 in that particular case. They talked about how that's an abstention doctrine. This is a definitional exclusion where Congress said this is what is not a mass action, and what Congress said is this is not a mass action if it arises out of an event or an occurrence, and we can talk about event or occurrence, but this is a definitional exclusion. An exception, for example, would be if I give you a box of 100 Michael Jordan rookie cards and I say these are yours but you can decline them or you shall decline them if they have any LeBron James cards in them. That's discretionary. They're your cards, and it's up to you whether to decline them or not. Conversely, when you talk about a definitional exclusion like we're talking about here in D-11, I say here's a box of cards, but they're not your cards if any Michael Jordans are in them. They were never your cards. The issue there, Your Honor, and when we talk about sua sponte, the court raising it, is that can be raised at any time because the district court never had a grasp of that. The district court never had that jurisdiction of this particular case because it's an exclusion, not an exception, as was described in the Hart case. So for those reasons, the court did the exact right thing. Now I know that defendants talk about plaintiffs forum shopping. I know those are sexy words. It makes us think we've got to put a stop to Trevor forum shopping. But that's not what happened here. This case was removed to federal court. We had a pretrial conference in May of 2025, and the judge asked us our position on CAFA. And I said, well, Your Honor, I prefer to be right here in front of you with this case, but I don't get to consent to jurisdiction. This is magistrate or district court? Magistrate. Magistrate judge. I said I prefer to be right here because it will be expedient. There will be no shenanigans, and you're already handling the other case. But I understand I can't consent to jurisdiction. So the judge then asked us to show cause on why we think that that exception applies, and then that's when we explained our position. And the court agreed with us and declined jurisdiction. And we think that you should affirm the district court's decision that there's no jurisdiction in the federal court, which then bumps us down to state court. But this is not a matter of forum shopping. In fact, Congress carved this CAFA out in 2005 to expand the federal court's jurisdiction and to eliminate the abuses that it was seeing in cases that involved over 100 plaintiffs or 100 people. It gave the federal courts another way to get their hands on cases that met that particular act. I'd like to talk about the event and occurrence. Judge Easterbrook gave the example of the truck driver. He mentioned drinking and driving. He mentioned cell phone. All of those actions are antecedent negligent acts. That is not what caused the injuries or damages to my clients. The truck running my client over or rolling over in Judge Easterbrook's case is what caused the injuries and damages to my client. Now, we would allege that he was drunk. We would allege as a plaintiff's lawyer that he was on his cell phone, and that might go to duty, breach, and perhaps punitive damages. All of those negligent acts that we allege are just antecedent acts of negligence that have nothing to do with the fire that took place in this case. Yes, the city owned two of the properties. They allowed all of this plastic and trash and debris to accumulate on their properties. They had cited Mr. Smith for this years in advance. When they got a hold and owned the properties, they did nothing that they asked Mr. Smith to do. So those are all antecedent negligent acts that the city engaged in, Mr. Smith engaged in, and it culminated in one single event. It culminated in this fire. The phrase event or occurrence is read different ways by different courts. It has a tenor of being insurance language, event or occurrence. At the same time, the different circuits are looking at this in different ways. How do you say we should look at it? Are we to look at traditional dictionaries, legal dictionaries? Is there a certain case that you're advocating as best for us to view event or occurrence? Well, I think all the cases support our position, even the Allen case that the defendants are keen on. Allen shows you what a multiple exposure injurious conduct is. That's what the Allen case says. It doesn't say that you can't have a single fire that lasts eight days, that that can't be an event or an occurrence. And Congress gave us, gave you the flexibility to take that phrase event or occurrence because it can be a short, quick event like the Francis Key Scott Bridge. Or it can be a natural or it can be an industrial disaster like this fire or wildfires or flooding or things of that nature. So the Congress specifically thought about that and gave the federal courts flexibility to determine and not give it one temporal element to it that might eliminate other cases such as the Francis Scott Key Bridge where the bridge fell within 30 seconds. Now, if you look in hindsight, you'll see all the antecedent negligent acts by the cargo ship company. They had multiple electrical failures on that ship. They had loose wiring. They had terrible maintenance. Again, that's not what caused the ship to run into the bridge. It was that particular electrical failure that caused it to run into the Francis Scott Key Bridge and for the bridge to collapse. And that happened in a matter of 30 seconds. What do you say to Mr. Thomas who tells us that you're seeking to recover on grounds that are independent of the fire in the complaint? Your Honor, I don't follow, quite frankly, where, with all due respect, where Mr. Thomas is coming from. I wouldn't be standing here if there was no fire. There's no claim, there's no injurious conduct if there's no fire. If all of the debris, all of the plastic, all of the trash was still sitting in Wayne County, Richmond, Indiana, on the city's property and on Mr. Smith's property, I would not be standing here. We allege various actions. We almost always, as Judge Easterbrook mentioned, plead in the alternative. But that complaint would not have been filed for any of those claims that we put into our complaint but for the fire, but for this industrial fire. What is the numerical overlap between the individuals in the class action and the individuals in the mass action? 120, give or take two or four. If we were purely looking at this in terms of efficiency, which obviously is one of the ideas behind the act, there seem to be some duplicative resources here. I mean, your firm is no longer involved in class action, but we've got 120 common plaintiffs. Presumably, many of the experts will be the same. Certainly, much of the fact discovery could be the same. What are your thoughts on that? You're exactly right, Your Honor, and we discussed that with the defendants. Of course, it's at the time of the filing of the complaint where that jurisdiction issue is taken into account. But we have discussed with defendants, hey, we're going to dismiss 120 or so because they are within that half-mile evacuation zone. Why don't we come up with a different plan, a different suggestion? Well, no, because it's at the time that you filed the complaint. So here we are. We do plan on, once the exact half-mile evacuation zone is defined, and it's not an easy thing to do, to dismiss the 120 or so plaintiffs that we represent if they opt into the class action. And the status of the two plaintiffs, the two named plaintiffs? They are named individually as well in this particular case, and we've talked about dismissing them as well because they were clearly within the evacuation zone. Those are some administrative matters that have been discussed and brought up to the magistrate judge and to defense counsel, and we're taking it one step at a time. And we're in the process of getting that, from what I understand, they're getting that evacuation zone half-mile. It's kind of hard to define when you talk about residential communities, businesses, and so forth. But that's the intent is to pare down the case, and then we'd be left with 33 or so plaintiffs in our particular case. Thank you, Mr. Croson. Thank you. Thank you. We'll now move to rebuttal argument. Mr. Thomas. Thank you, Your Honors. As the Ninth Circuit said in the Allen decision, even the Civil War could be considered as one event if you broadly interpret the word event or occurrence. Rather, here, we believe that there are multiple events leading to multiple claims against multiple defendants and involve multiple different parties. It's not the case that plaintiffs allege that the MiWay defendants, these three industrial defendants, acted in any sort of collective or concerted effort with the city. Rather, even beyond the example of an environmental consultant and a polluter acting separately, as in the Boeing case, here, the city was acting in opposition to these defendants, was telling them to clean up their properties. And the allegations against the city are that it didn't act quickly enough. Mr. Thomas, if your clients prevail here and the matter is not remanded to Wayne County, so it remains in the federal court, what's the anticipation with regard to this case in relation to the class action? We believe the class action is separate from this case. Some of the plaintiffs may dismiss their claims if the class action persists to trial. There's current briefing about the class proceeding in the first filed action. If they were to dismiss, as I think counsel acknowledged, this court's precedent, even a dismissal of 100 plaintiffs would not disturb CAFA jurisdiction that was secure at the time of removal. And so we believe that the jurisdiction would be secure. We submit the case to the court and ask for this court to reverse and order the court to proceed on the merits of this claim. Thank you. Thank you, Mr. Thomas. Thank you, Mr. Croson. The case will be taken under advisement. That will close the court's oral arguments for the day.